# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

**Kathleen E. RICHARD**
**Yeoman Second Class (E-5), U.S. Coast Guard**
Petitioner

**United States**
Real Party in Interest

**Misc. Docket No. 001-25**

**7 January 2026**

Review of Petition for Extraordinary Relief in the Nature of a Writ of Mandamus

| | |
|---|---|
| Military Judge: | CDR Jeffrey C. Barnum, USCG |
| Appellate Defense Counsel: | LCDR Megan E. Martino, JAGC, USN |
| | LCDR Kristen R. Bradley, USCG |
| Appellate Government Counsel: | Mr. John P. Nolan, Esq. |
| | CAPT Anita M. Scott, USCG |

**BEFORE**
**McCLELLAND, JUDGE & BRUBAKER**
Appellate Military Judges

McCLELLAND, Chief Judge:

Petitioner, an accused at a general court-martial, seeks extraordinary relief in the form of a writ of mandamus ordering that the charge and specification be dismissed with prejudice, citing the Double Jeopardy Clause of the Fifth Amendment and Article 44, Uniform Code of Military Justice (UCMJ). We conclude Petitioner has failed to show that she is entitled to relief.

In 2021, after the death of her infant daughter, Petitioner was tried at a general court-martial on one specification of unpremeditated murder, in violation of Article 118(2), UCMJ; and one specification of murder while engaging in an act inherently dangerous to another, in violation of Article 118(3). The members were instructed on involuntary manslaughter, in violation of Article 119(b), as a lesser included offense (LIO) of the specification of unpremeditated murder. Petitioner was found not guilty of both murder specifications, but guilty

of the LIO of involuntary manslaughter. The specification of unpremeditated murder alleged that she killed the child "by asphyxia."

On appeal, this Court set aside the conviction, holding "that the specification failed to provide adequate notice of the act(s) or omissions(s) on which the involuntary manslaughter conviction was based and that this error was not harmless beyond a reasonable doubt." *United States v. Richard*, 84 M.J. 586, 588 (C.G. Ct. Crim. App. 2024) ("*Richard I*"). We dismissed the specification and authorized a rehearing. *Id*. at 593.

The Government has now referred to general court-martial against Petitioner one specification of involuntary manslaughter, in violation of Article 119(b). The specification alleges that she killed the child by "tightly swaddling [the child], placing [the child] in the bed face down, and using her hand to press [the child]'s head into the bed." Petitioner moved to dismiss the specification on account of "constitutional and statutory protection against double jeopardy." The military judge denied the motion on 21 October 2025. Petitioner filed this petition thereafter, raising the following issues:

1. Given the ambiguous verdict in the first trial, trying Petitioner on the new specification is barred by double jeopardy principles.

2. The appellate decision after the first trial authorized a rehearing, but the second trial is an "other trial" under Rule for Courts-Martial (R.C.M.) 810(e), which was not authorized.

3. When an accused is acquitted of a specification but convicted of a lesser included offense, and the conviction is reversed because the specification was legally inadequate, a retrial is only permissible if a proper instruction on the lesser included offense had been given. In this case, no instruction was given on lesser included offense under murder while engaging in an act inherently dangerous to another, and the instruction on lesser included offense under unpremeditated murder was legally incorrect because it was based on the legally inadequate original specification.

## Law

"The writ of mandamus is a drastic instrument which should be invoked only in truly extraordinary situations." *United States v. Labella*, 15 M.J. 228, 229 (C.M.A. 1983). To prevail, a petitioner seeking a writ of mandamus must show that: "(1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of

the writ is appropriate under the circumstances." *Hasan v. Gross*, 71 M.J. 416, 418 (C.A.A.F. 2012) (citing *Cheney v. United States Dist. Court for D.C.*, 542 U.S. 367, 380–81 (2004)). The double jeopardy issue is a question of law that we review de novo. *United States v. Driskill¸* 84 M.J. 248, 252 (C.A.A.F. 2024) (citing *United States v. Hutchins*, 78 M.J. 437, 444 (C.A.A.F. 2019)).

The Fifth Amendment to the U.S. Constitution provides, "No person shall . . . be subject, for the same offence, to be twice put in jeopardy of life or limb." This is the Double Jeopardy Clause. Similarly, Article 44(a), UCMJ, provides, "No person may, without his consent, be tried a second time for the same offense." However, Article 44(b), UCMJ, further provides, "No proceeding . . . is a trial in the sense of this article until the finding of guilty has become final after review of the case has been fully completed." Hence, "When a conviction is overturned on appeal, . . . [t]he ordinary consequence . . . , if the Government so elects, is a new trial shorn of the error that infected the first trial." *Bravo-Fernandez v. United States*, 580 U.S. 5, 18 (2016) (citation omitted). More precisely, "successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, . . . poses no bar to further prosecution." *United States v. Scott*, 437 U.S. 82, 90–91 (1978) (citation omitted).

When a person is charged with one offense, the court is instructed on and convicts the person of a lesser included offense, and the conviction is reversed on appeal, the person may be tried again upon the lesser included offense. *United States v. McMurrin*, 72 M.J. 697 (N.M. Ct. Crim. App. 2013), *pet. denied* 73 M.J. 243 (C.A.A.F. 2014), *cert. denied* 574 U.S. 936 (2014); *United States v. Gooday*, 714 F.2d 80 (9th Cir. 1983), *cert. denied* 468 U.S. 1217 (1984).

**"Ambiguous" verdict**

Petitioner labels as ambiguous the verdict of guilty of involuntary manslaughter at the first trial. It is true that it was ambiguous in the sense that an observer cannot know what act or acts the court members believed caused the child's death. This is a natural consequence of the general verdict. "A court-martial panel . . . returns a general verdict and does not specify how the law applies to the facts, nor does the panel otherwise explain the reasons for its decision to

convict or acquit." *United States v. Hardy*, 46 M.J. 67, 73 (C.A.A.F. 1997). However, the verdict was not an "ambiguous verdict" as described in case law.

The classic "ambiguous verdict" situation is presented by *United States v. Wilson*, 67 M.J. 423 (C.A.A.F. 2009). A single specification alleged that an offense occurred "on divers occasions" over a period of time. *Id.* at 424. The accused was found guilty of the specification, excepting the words "on divers occasions." *Id.* There was no indication of which occasion was the basis for the guilty finding. *Id.* at 427. Thus, "the accused [had] been found guilty of misconduct on a single occasion and not guilty of the remaining occasions." *Id.* at 428 (quoting *United States v. Augspurger*, 61 M.J. 189, 190 (C.A.A.F. 2005) (cleaned up)). "If there is no indication on the record which of the alleged incidents forms the basis of the conviction, then the findings of guilt are ambiguous and the Court of Criminal Appeals cannot perform a factual sufficiency review." *Id.* (citing *United States v. Walters*, 58 M.J. 391, 396–97 (C.A.A.F. 2003)).

The ambiguous verdict doctrine "applies only in those narrow circumstances involving the conversion of a 'divers occasions' specification to a 'one occasion' specification through exceptions and substitutions by the members. An unadulterated, unobjected-to, general verdict implicitly contains a verdict of guilt as to each underlying act . . . ." *United States v. Rodriguez*, 66 M.J. 201, 205 (C.A.A.F. 2008) (cleaned up).

The case of *Russell v. United States*, 369 U.S. 749 (1962), cited in our opinion in *Richard I*, sets out the difference between our case and the ambiguous verdict situation:

> [T]wo of the criteria by which the sufficiency of an indictment is to be measured . . . are, first, whether the indictment contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, secondly, in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

369 U.S. at 763–64 (cleaned up).

*Richard I*, like the *Russell* case, failed the first criterion. Ambiguous verdict cases fail the second criterion. These are cases in which the verdict comprises both a finding of guilty and a

finding of not guilty, with no clarity on what act(s) or occasion(s) or instance(s) the finding of guilty applies to, and likewise no clarity on what act(s) or occasion(s) or instance(s) the finding of not guilty applies to.

In the trial of *Richard I*, the Charge I, specification 1 murder specification alleged that the accused acted "with an intent to kill or inflict great bodily harm." Pet., App'x A [charge sheet from *Richard I*]. The LIO instruction that led to the finding of guilty of involuntary manslaughter substituted for that intent that the accused's act "constituted culpable negligence." Trial Transcript at 3959, *Richard I*. The remaining elements of the two offenses were the same. The members convicted him of the LIO of involuntary manslaughter without exception. The acquittal on murder along with the conviction on involuntary manslaughter means that the intent element of murder was not found proved. Instead, the element of culpable negligence was found proved. It is clear that the acquittal lies only in the absence of the intent associated with murder. There is no ambiguity about what feature of the specification is associated with the acquittal.

Petitioner argues that "both this Court and the Military Judge have found she was quite possibly already acquitted of" certain alleged acts at her first trial that are now being alleged at the second trial. Pet. at 14. Neither this Court nor the Military Judge so found. We opined that it is "possible . . . that the members rejected the pressed-head-into-mattress theory along with the intentional-murder theory and based their finding of culpable negligence instead on some other act(s) or omission(s)." 84 M.J. at 593. This is far from finding that petitioner was acquitted of pressing the child's head into the mattress. Rather, it is, again, a statement of the uncertainty as to specifics that is a natural consequence of the general verdict. Likewise, the Military Judge stated,

> It is certainly possible the members acquitted the accused of murder because they did not believe she pressed [the child's] head into the mattress . . ., but it is equally possible they acquitted her of murder because they believed she acted with culpable negligence while pressing [the child's] head into the mattress rather than with intent to kill or inflict great bodily harm.

Pet., App'x W at 16. In short, Petitioner's argument on this point is wholly without merit.

## "Rehearing" or "Other Trial"?

Petitioner asserts that although we authorized a rehearing in *Richard I*, the new trial is not a rehearing but an "other trial" under R.C.M. 810(e), which was not authorized by our opinion. Petitioner further asserts that a rehearing within the meaning of R.C.M. 810 is not legally possible or permissible, since a rehearing would be upon the same charge and specification that were considered at the first trial, whereas that charge and specification were dismissed as defective in *Richard I*.

As the Government points out, the terms "rehearing," "new trial," and "other trial," set out in R.C.M. 810, all fall under the statutory term "rehearing" in Article 66(f)(1)(A)(ii), UCMJ. It is fair to say that the circumstances of our authorizing a rehearing (using the statutory term) in *Richard I* place any such rehearing within the definition of "other trial" in R.C.M. 810(e), but that does not mean we did not authorize it. *See United States v. Leal*, 81 M.J. 613, 618 (C.G. Ct. Crim. App. 2021) ("'other' trials have no statutory provenance.")

Petitioner argues, "Nothing about the definition of an 'other trial' permits the Government to try the accused a second time on an LIO that could have been brought in the first prosecution." Pet. at 18. The argument lacks support and involves a *non sequitur*. In this case, there was a properly instructed LIO of involuntary manslaughter. The only defect was that, as charged, it failed to state an offense. R.C.M. 810(e) expressly defines an "other" trial as "another trial of a case in which the original proceedings were declared invalid because of . . . failure of a charge to state an offense." Petitioner's argument fails.

## "Legally incorrect" instruction on LIO

Petitioner argues that because no LIO instruction was given under the specification of inherently-dangerous-act murder (specification 2), the acquittal thereon effected an acquittal of involuntary manslaughter (which could have been instructed on), regardless of other routes to that LIO (here, the other murder specification) and hence there can be no retrial on the LIO of involuntary manslaughter.

There is no basis for the notion that the effect of the acquittal of the inherently-dangerous-act murder specification extends to the unpremeditated murder specification. We reject this argument.

As to the instruction on LIO under the specification of unpremeditated murder (specification 1), Petitioner asserts that

> the Military Judge in *Richard I* instructed the members on a legally incorrect LIO, which was essentially a legal nullity. The cases permitting jeopardy to persist over an LIO rely on a proper LIO instruction. Thus, it logically follows that continuing jeopardy over the LIO is contingent on the propriety of the instruction. If no legally proper LIO is instructed on, jeopardy terminates over the greater offense and all LIOs when there is an acquittal on the greater offense.

Pet. at 35 (cleaned up).

There is no basis for the notion that an instruction on an LIO, constructed in accordance with principles for instructing on an LIO (that is, using the terms of the original specification), is a "legal nullity" simply because both the original specification and the LIO specification were defective. As the Government cogently argues, when the conviction was set aside in *Richard I* for technical reasons, retrial was not barred.

## Decision

In sum, Petitioner fails to demonstrate that she is clearly and indisputably entitled to the relief she seeks. Petitioner's petition for extraordinary relief in the form of a writ of mandamus is DENIED.

Judges JUDGE and BRUBAKER concur.



For the Court,

Rebecca P. Pskowski
Acting Clerk of the Court