# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39217**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Logan P. MARTIN**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 13 June 2018

————————————

*Military Judge:* Mark W. Milam (arraignment); Vance H. Spath.

*Approved sentence:* Dishonorable discharge, confinement for 3 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 9 November 2016 by GCM convened at Minot Air Force Base, North Dakota.

*For Appellant:* Major Allen S. Abrams, USAF; Major Jarett F. Merk, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain James S. Vicchairelli, USAF; Mary Ellen Payne, Esquire.

Before HARDING, SPERANZA, and HUYGEN, *Appellate Military Judges.*

Senior Judge HARDING delivered the opinion of the court, in which Judges SPERANZA and HUYGEN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

HARDING, Senior Judge:

A general court-martial composed of a military judge found Appellant, contrary to his pleas, guilty of one specification of aggravated assault in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928, and of one specification of failure to obey a lawful order in violation of Article 92, UCMJ, 10 U.S.C. § 892. The military judge sentenced Appellant to a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority disapproved and waived the adjudged and automatic forfeitures, respectively, but otherwise approved the sentence as adjudged.

Appellant raises two errors on appeal: (1) whether the finding of aggravated assault is ambiguous, thus preventing this court from conducting a factual sufficiency review under Article 66, UCMJ, 10 U.S.C. § 866; and (2) whether his conviction for violating a no-contact order is legally and factually sufficient. We find no prejudicial error and affirm.

## I. BACKGROUND

After returning to their apartment from a party at a friend's house, Appellant and Airman First Class (A1C) AG were involved in an argument that turned physical. While straddling A1C AG as she was on the ground, Appellant placed his hands around her throat. A1C AG managed to buck Appellant off of her by thrusting her hips and then she went into the bathroom. While in the bathroom, A1C AG coughed up mucus containing some amount of blood. After A1C AG came out of the bathroom, Appellant placed her in a chokehold by placing her neck between his forearm and bicep. A1C AG lost consciousness as a result. A1C AG testified that at some point after she came out of the bathroom, although she was not sure whether this occurred before or after she lost consciousness, Appellant placed a gun to his head and threatened to kill himself. A1C AG took the gun away from Appellant and hid it.

After being strangled by Appellant and observing his suicidal gesture, A1C AG called their roommate for help. The roommate did not answer his cellphone; but HO, the friend who hosted the party, did. HO and her husband, WO, then drove to the apartment as requested by A1C AG. Once there, WO checked on Appellant and found him sleeping on the floor. A1C AG left with HO and WO to go back to their home. After observing A1C AG's bloodshot eyes, HO and WO encouraged A1C AG to get medical treatment. A1C AG initially declined, but went to the emergency room later that day after she was strongly urged to do so by her supervisor. As a result of the strangulation, A1C AG suffered subconjunctival hemorrhaging, the bursting of blood vessels, in both eyes.

Appellant was ordered into pretrial confinement and remained in that status until 10 May 2016, when he was released and restricted to the limits of Minot Air Force Base, North Dakota. Also on 10 May 2016, Appellant's squadron commander, Lieutenant Colonel (Lt Col) KE, issued Appellant a no-contact order both orally and in writing. Appellant was "ordered to cease all contact with A1C AG" and notified that any communication with A1C AG, including by e-mail, social media, text-messaging, or phone, would constitute a violation of the order. The written order concluded with a statement that the order would remain in effect until "10 Nov 15." At trial Lt Col KE testified that the "5" in the "10 Nov 15" was a typographical error and that Appellant received a supplemental order with the correct expiration date of 10 November 2016. On multiple occasions after 10 May 2016, Appellant communicated with A1C AG by sending her text messages, calling her cell phone, and upon seeing her at the base fitness center, mouthing the words "I'm sorry, can we talk?"

## II. DISCUSSION

### A. Ambiguous Finding

Appellant contends the excepting of the phrase "on divers occasions" and substitution of the phrase "spit up and cough" rendered the finding of guilty for the charge of aggravated assault ambiguous, and incapable of factual sufficiency review. We disagree.

"Whether a verdict is ambiguous and thus precludes a [court of criminal appeals (CCA)] from performing a factual sufficiency review is a question of law reviewed *de novo*." *United States v. Ross*, 68 M.J. 415, 417 (C.A.A.F. 2010). A military CCA, in the course of its review process, cannot conduct a factual sufficiency review of an accused's conviction when "the findings of guilty and not guilty do not disclose the conduct upon which each of them was based." *United States v. Trew*, 68 M.J. 364, 366 (C.A.A.F. 2010) (quoting *United States v. Walters*, 58 M.J. 391, 397 (C.A.A.F. 2003)). However, the general verdict rule provides that when a "factfinder returns a guilty verdict on an indictment charging several acts, the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *United States v. Rodriguez,* 66 M.J. 201, 204 (C.A.A.F. 2008) (citing *Griffin v. United States*, 502 U.S. 46, 49 (1991)).

On 3 June 2016, Lt Col KE preferred the following specification, among others, against Appellant:

> In that SENIOR AIRMAN LOGAN P. MARTIN, United States Air Force, 91st Missile Security Forces Squadron, Minot Air Force Base, North Dakota, did, at or near Minot, North Dakota, on or about 15 October 2015, on divers occasions, commit an assault upon Airman First Class AG with a means or force likely

> to produce death or grievous bodily harm, to wit: strangling her,
> and did thereby intentionally inflict grievous bodily harm upon
> her, to wit: causing bleeding underneath the surface of her eyes,
> and causing her to vomit blood and mucus and lose conscious-
> ness.

On 3 August 2016, the Government amended the specification by striking the language "on divers occasions," and "causing bleeding underneath the surface of her eyes, and" from the specification. Thus, Appellant was arraigned on 29 August 2016 on the following specification;

> In that SENIOR AIRMAN LOGAN P. MARTIN, United States
> Air Force, 91st Missile Security Forces Squadron, Minot Air
> Force Base, North Dakota, did, at or near Minot, North Dakota,
> on or about 15 October 2015, commit an assault upon Airman
> First Class AG with a means or force likely to produce death or
> grievous bodily harm, to wit: strangling her, and did thereby in-
> tentionally inflict grievous bodily harm upon her, to wit: causing
> her to vomit blood and mucus and lose consciousness.[1]

Appellant asserts that *Walters* and its progeny require us to set aside and dismiss the aggravated assault Charge and its Specification. In *Walters,* the appellant was charged with using ecstasy on divers occasions. The members found appellant guilty except the words "on divers occasions." The findings, however, did not indicate the single occasion on which the conviction was based. The United States Court of Appeals for the Armed Forces held that as a result, the CCA could not perform its factual sufficiency review under Article 66(c), UCMJ, because the CCA could not determine which one of the possible incidents of misconduct the members relied on in finding the appellant guilty. *Walters*, 58 M.J. at 397.

While the specification of aggravated assault of which Appellant was charged did contain the phrase "on divers occasions" at preferral, it *did not* contain that phrase at arraignment. The words "on divers occasions" were not present in the specification at findings, and therefore there was no possibility

---

[1] The specification contained two theories for aggravated assault: means or force likely to produce death or grievous bodily harm, and intentional infliction of grievous bodily harm. The Government in its opening statement and in motion practice made clear that its primary theory was intentional infliction of grievous bodily harm. When asked by the military judge about lesser included offenses, the Government asserted two: aggravated assault by means or force likely to produce death or grievous bodily harm, and assault consummated by a battery. Appellant's trial defense counsel agreed.

for them to be excepted nor the accompanying potential for ambiguous findings. The Government proceeded to trial on Appellant's strangling of A1C AG as a single occasion and continuing course of conduct. The military judge entered a general verdict[2] finding Appellant guilty of the specification except the word "vomit." Consistent with the testimony at trial, the military judge substituted the words "spit up and cough" for "vomit" and found Appellant guilty of those words.[3]

Importantly, unlike in *Walters* and its progeny, the factfinder in Appellant's case did not except the words "on divers occasions" from a specification thereby indicating a finding of guilt on only one occasion, and a *finding of not guilty of the other occasions. "*[T]he difference in the verdicts of the factfinders is the dispositive distinction between this case and *Walters . . . ." Rodriguez*, 66 M.J. at 202. The rule from *Walters* "applies only in those 'narrow circumstance[s] involving the conversion of a 'divers occasions' specification to a 'one occasion' specification through exceptions and substitutions" by the members. *United States v. Brown*, 65 M.J. 356, 358 (C.A.A.F. 2007) (alteration in original) (citing *Walters,* 58 M.J. at 396)). In the present case, there is no ambiguity. This is not a *Walters* case. We are not left to speculate as to what the military judge found Appellant guilty of. By a general verdict, he found Appellant guilty of strangling A1C AG.

## B. Legal and Factual Sufficiency

Appellant asserts that, due to the typographical error in the written no-contact order, the order was not in effect during the period of time when Appellant communicated with A1C AG, and therefore the evidence failed to demonstrate that Appellant was issued a certain lawful order and that Appellant had actual knowledge of the order. We disagree.

We review issues of legal and factual sufficiency de novo. Article 66(c), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United*

---

[2] Special findings were not requested by either party. *See* Rule for Courts-Martial 918(b).

[3] During her testimony, A1C AG never used the word "vomit" to describe what happened and agreed on cross-examination that she did not vomit. She did testify to coughing up mucus and blood.

*States v. Turner*, 25 M.J. 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The "reasonable doubt" standard does not require that the evidence be free from conflict. *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017), *aff'd, United States v. Wheeler,* 77 M.J. 289 (C.A.A.F. 2018) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399).

In order to prove the charged offense, failure to obey a lawful order in violation of Article 92, UCMJ, the Government was required to prove beyond a reasonable doubt: (1) that a member of the armed forces issued a certain lawful order to Appellant; (2) that Appellant had knowledge of the order; (3) that Appellant had a duty to obey the order; and (4) that at a certain time and place, Appellant failed to obey the order. *Military Judges' Benchbook*, Dept. of the Army Pamphlet 27-9 at 259 (10 Sep. 2014).

Contrary to the importance placed on "10 November 2015" by Appellant, we deem critical the date of 10 May 2016. On that date, Appellant was released from pretrial confinement, but remained subject to lesser forms of pretrial restraint. On 10 May 2016, Appellant was restricted to the limits of Minot Air Force Base and was issued a no-contact order both orally and in writing. The written no-contact order stated, "in order to ensure good order and discipline, YOU ARE HEREBY ORDERED to cease all contact with A1C AG." The written order also instructed Appellant what to do should he enter a public place where A1C AG was present or if she initiated contact. A specific order to refrain from *future* contact with A1C AG is the reasonable interpretation of the order even with the typographical error of its expiration date, specifically, the year. Further, Lt Col KE testified that the typographical error had been addressed with Appellant.

Drawing "every reasonable inference from the evidence of record in favor of the prosecution," we conclude the evidence was legally sufficient to support Appellant's conviction of failure to obey a lawful order beyond a reasonable doubt. *Barner*, 56 M.J. at 134 (citations omitted). Moreover, having weighed

the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325. Appellant's conviction of failure to obey a lawful order is therefore both legally and factually sufficient.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.[4]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[4] The court-martial order fails to include a specification on which Appellant was arraigned. In addition to the offenses addressed in this opinion, Appellant was also arraigned for a second specification of aggravated assault committed against another person. This specification, listed as Specification 2 of Charge II on the original charge sheet, was withdrawn and dismissed on 7 November 2016 prior to the entry of pleas. We order a corrected court-martial order.